OPINION
 

 Per Curiam:
 

 In this petition we are asked if the appointment of the commissioner of insurance as an agent to receive service of legal process pursuant, to NRS 680A.250,
 
 [1]
 
 by itself, subjects a nonresident insurance company to personal jurisdiction in Nevada. We hold that it does not.
 

 
 *552
 

 FACTS
 

 In August of 1998, Mark Freeman filed an action against West American Insurance Company (“West American”) and Ohio Casualty Insurance Company (“Ohio Casualty”) in Washoe County, Nevada, for malicious prosecution. Freeman has been a Nevada resident since 1994. Freeman’s claim arose from previous litigation in California between Freeman and West American. The underlying dispute did not involve Nevada in any way.
 
 [2]
 

 Ohio Casualty is an Ohio corporation licensed to do business in Nevada since 1939. West American, a subsidiary of Ohio Casualty, is an Indiana corporation licensed to do business in Nevada since 1975. Pursuant to NRS 680A.250, each company has appointed the commissioner of insurance as its agent authorized to receive service of legal process in Nevada.
 

 After Freeman filed his Nevada action, West American and Ohio Casualty each made a special appearance and moved to quash service of process, claiming that Nevada lacked personal jurisdiction over them. The district court granted the motion after determining that neither general nor specific jurisdiction could be established over West American and Ohio Casualty. This original petition for a writ of mandamus followed.
 

 DISCUSSION
 

 It is well established that a petition for a writ of mandamus is the proper means by which to challenge an order quashing service of process. Firouzabadi v. District Court, 110 Nev. 1348, 1351-52, 885 P.2d 616, 618 (1994).
 

 
 *553
 
 There are two types of personal jurisdiction: general and specific. Trump v. District Court, 109 Nev. 687, 699, 857 P.2d 740, 748 (1993). “General jurisdiction occurs where a defendant is held to answer in a forum for causes of action unrelated to the defendant’s forum activities.”
 
 Id.
 
 “General jurisdiction over the defendant ‘is appropriate where the defendant’s forum activities are so “substantial” or “continuous and systematic” that it may be deemed present in the forum.’ ”
 
 Id.
 
 (quoting Budget Rent-A-Car v. District Court, 108 Nev. 483, 485, 835 P.2d 17, 19 (1992)). “[S]pecific personal jurisdiction over a defendant may be established only where the cause of action arises from the defendant’s contacts with the forum.”
 
 Trump,
 
 109 Nev. at 699, 857 P.2d at 748. To subject a defendant to specific jurisdiction, this court must determine if the defendant “purposefully established minimum contacts” so that jurisdiction would “comport with ‘fair play and substantial justice.’ ” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945));
 
 see also Trump,
 
 109 Nev. at 699-700, 857 P.2d at 748-49.
 

 The plaintiff bears the burden of producing some evidence in support of all facts necessary to establish personal jurisdiction.
 
 Trump,
 
 109 Nev. at 692-93, 857 P.2d at 744. The record indicates that West American did not collect any premiums in Nevada in 1997 and that Ohio Casualty collected a de minimis amount in the same year. We conclude that the insurance companies’ activities in Nevada were not so substantial or continuous and systematic as to subject them to the general jurisdiction of the district court. As previously mentioned, the underlying dispute did not arise out of the insurance companies’ contacts with Nevada. Therefore, the district court properly determined that it lacked specific jurisdiction over the insurance companies.
 

 In this petition, Freeman contends that West American and Ohio Casualty consented to the general jurisdiction of Nevada’s courts when the companies appointed the commissioner of insurance as an agent to receive service of legal process pursuant to NRS 680A.250. West American and Ohio Casualty argue that the mere act of appointing an agent to receive service of process does not subject a non-resident corporation to general jurisdiction. We note that Nevada has heretofore not addressed this question. Other jurisdictions, as well as legal authorities that have considered the issue, are divided.
 

 Freeman primarily relies on Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining and Milling Co., 243 U.S. 93
 
 *554
 
 (1917). In
 
 Gold Issue,
 
 the defendant insurance company obtained a license to do business in Missouri.
 
 Id.
 
 at 94. In order to obtain a license, the insurance company was required to, and did, file “with the superintendent of the insurance department a power of attorney consenting that service of process upon the superintendent should be deemed personal service upon the company so long as it should have any liabilities outstanding in the state.”
 
 Id.
 
 The Missouri Supreme Court held that the insurance company was thus subject to the jurisdiction of Missouri courts.
 
 Id.
 
 at 95. The United States Supreme Court affirmed, stating that ‘ ‘the construction did not deprive the defendant of due process of law even if it took the defendant by surprise.”
 
 Id. Gold Issue
 
 has not been expressly overruled.
 
 [3]
 

 Many courts have continued to apply the holding of
 
 Gold Issue.
 
 A thorough analysis of the issue was set forth in Sternberg v. O’Neil, 550 A.2d 1105 (Del. 1988). The Delaware Supreme Court recognized the dispute between the holding in
 
 Gold Issue
 
 and the “minimum contacts” analysis required under
 
 International Shoe.
 
 However, the court determined that the two theories “complement one another and are neither inconsistent nor mutually exclusive.”
 
 Id.
 
 at 1110. The court described two forms of consent to jurisdiction: implied and express.
 
 Id.
 
 The court then determined that a “minimum contacts” analysis is applicable “in the absence of any other basis for the exercise of jurisdiction.”
 
 Id.
 
 at 1111. The court took the view that “a state still has power to exercise general judicial jurisdiction over a foreign corporation which has expressly consented to the exercise of such jurisdiction,” and thus no “minimum contacts” analysis is necessary.
 
 [4]
 

 Id.
 
 at 1111, 1117. Thus, the court held that the Delaware court properly exercised jurisdiction over a non-resident corporation which had appointed an agent to receive service of process as a condition to conducting business in Delaware.
 
 [5]
 

 Id.
 

 Many courts and legal authorities agree that the appointment of an agent to receive service of process subjects a non-resident corporation to personal jurisdiction in that state.
 
 See
 
 Bane v. Netlink, Inc., 925 F.2d 637, 640 (3d Cir. 1991) (holding that a corporation was subject to jurisdiction in Pennsylvania because
 
 *555
 
 ‘ ‘Pennsylvania law explicitly states that the qualification of a foreign corporation to do business is sufficient contact to serve as the basis for the assertion of personal jurisdiction”); Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196, 1200 (8th Cir. 1990) (“We conclude that appointment of an agent for service of process . . . gives consent to the jurisdiction of Minnesota courts for any cause of action, whether or not arising out of activities within the state. Such consent is a valid basis of personal jurisdiction, and resort to minimum-contacts or due-process analysis to justify the jurisdiction is unnecessary.”); Holloway v. Wright & Morrissey, Inc., 739 F.2d 695, 698 (1st Cir. 1984) (holding that a statute requiring a corporation to appoint a registered agent is not affected by New Hampshire’s long arm statute); Werner v. Wal-Mart Stores, Inc., 861 P.2d 270, 272-73 (N.M. Ct. App. 1993) (holding that personal jurisdiction could be based on a theory of consent, and determining that New Mexico courts could obtain personal jurisdiction over all corporations who had appointed a registered agent in compliance with New Mexico law); Sharkey v. Washington Nat. Ins. Co., 373 N.W.2d 421, 425-26 (S.D. 1985) (holding that South Dakota courts had jurisdiction over an out-of-state insurer in regard to an insurance contract signed by a South Dakota resident in Wyoming because the insurer had appointed the South Dakota Director of Insurance as its registered agent in compliance with South Dakota law); Restatement (Second) of Conflict of Laws § 44 (1971).
 

 West American and Ohio Casualty argue that the holding enunciated in
 
 Gold Issue
 
 was implicitly abandoned by the United States Supreme Court through its decisions in
 
 International Shoe
 
 and its progeny.
 

 At the time
 
 Gold Issue
 
 was decided in 1917, the theory which dominated the Supreme Court’s thinking about jurisdiction had been characterized as the “power principle.”
 
 See
 
 1 Robert C. Casad & William B. Richman,
 
 Jurisdiction in Civil Actions
 
 § 2-2(2)(a) (3d ed: 1998). As Justice Oliver Wendell Holmes explained, “the foundation of jurisdiction is physical power.” McDonald v. Mabee, 243 U.S. 90, 91 (1917). Under this theory, a court exercised jurisdiction over a foreign corporation only if the corporation was deemed to be present in the forum state or had consented to its jurisdiction. 1 Casad & Richman,
 
 Jurisdiction in Civil Actions
 
 § 2-2(3)(c)(iii).
 

 International Shoe
 
 marked the beginning of the shift away from the power principle of personal jurisdiction toward principles of fundamental fairness.
 
 See
 
 1 Casad & Richman,
 
 Jurisdiction in Civil Actions
 
 §§ 2-2, 2-3.
 
 In International Shoe,
 
 the United States Supreme Court dealt with whether or not Washington State could
 
 *556
 
 impose a tax on a Missouri-based Delaware corporation and subject it to suit in Washington to collect the tax. The corporation employed several salesmen in Washington. The United States Supreme Court considered whether Washington courts could properly exercise jurisdiction over the corporation, stating:
 

 Historically the jurisdiction of courts to render judgment
 
 in personam
 
 is grounded on their de facto power over the defendant’s person. Hence his presence within the territorial jurisdiction of court was prerequisite to its rendition of a judgment personally binding him. But now that the
 
 capias ad respondendum
 
 has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment
 
 in personam,
 
 if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend “traditional notions of fair play and substantial justice.” Milliken v. Meyer, 311 U.S. 457, 463 [1940],
 

 International Shoe,
 
 326 U.S. at 316 (citation omitted).
 

 The Court reconciled its decision with earlier cases which found jurisdiction based upon presence or consent. As for consent, the inquiry relevant to the instant case, the Court said:
 

 True, some of the decisions holding the corporation amenable to suit have been supported by resort to the legal fiction that it has given its consent to service and suit, consent being implied from its presence in the state through the acts of its authorized agents. But more realistically it may be said that those authorized acts were of such a nature as to justify the fiction.
 

 Id.
 
 at 318 (citations omitted).
 

 A few years after
 
 International Shoe,
 
 the Court upheld an Ohio court’s exercise of jurisdiction over a non-resident corporation after its president was served with process while conducting business in Ohio. Perkins v. Benguet Mining Co., 342 U.S. 437, 448 (1952). The Court stated that “[t]he corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test.”
 
 Id.
 
 at 445.
 

 In 1977, the Supreme Court decided Shaffer v. Heitner, 433 U.S. 186 (1977). In
 
 Shaffer,
 
 the Court held that quasi
 
 in rem
 
 jurisdiction over a defendant’s property, traditionally a
 
 per se
 
 basis for jurisdiction, must be tested under the ‘ ‘minimum contacts” standard, stating that “all assertions of state-court juris
 
 *557
 
 diction must be evaluated according to the standards set forth in
 
 International Shoe
 
 and its progeny.”
 
 [6]
 

 Id.
 
 at 212.
 

 A few years later the Court decided Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). There, the Court held that Florida properly obtained jurisdiction over two Michigan residents who had obtained a Burger King franchise from a Florida-based corporation, because the Michigan residents had reached out to Florida to get a business contract, and knew that all the decisions regarding the contract were made in Florida.
 
 Id.
 
 at 479-81. In reaching its decision, the Court summarized jurisdictional law since
 
 International Shoe.
 
 The Court noted that due process requires that a defendant should reasonably anticipate out-of-state litigation,
 
 i.e.,
 
 “it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.”
 
 Id.
 
 at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). The Court stated:
 

 Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with “fair play and substantial justice.”
 
 International Shoe Co. v. Washington,
 
 326 U.S., at 320. Thus courts in “appropriate case[s]” may evaluate “the burden on the defendant,” “the forum State’s interest in adjudicating the dispute,” “the plaintiff’s interest in obtaining convenient and effective relief,” “the interstate judicial system’s interest in obtaining the most efficient resolution of controversies,” and the “shared interest of the several States in furthering fundamental substantive social policies.”
 

 Burger King,
 
 471 U.S. at 476-77 (quoting World-Wide Volkswagen Corp., 444 U.S. 286, 292 (1980)).
 

 The United States Supreme Court in
 
 International Shoe
 
 and its progeny has shifted the focus of the jurisdictional inquiry from a state’s physical power over a defendant to fundamental fairness and has abandoned the reasoning of
 
 Gold Issue.
 
 Other courts and legal scholars have agreed that the mere act of appointing an agent to receive service of process, by itself, does not subject a nonresident corporation to general jurisdiction.
 
 See
 
 Goodyear Tire & Rubber Co. v. Ruby, 540 A.2d 482, 487 (Md. 1988) (“The fact
 
 *558
 
 that Goodyear has appointed a resident agent in this State would not alone be sufficient to subject it to suit here.”); In re Mid-Atlantic Toyota Antitrust Litigation, 525 F. Supp. 1265, 1277-78 (D. Md. 1981),
 
 aff’d,
 
 704 F.2d 125 (4th Cir. 1983) (holding that West Virginia had no jurisdiction over a non-resident corporation that had a registered agent in West Virginia pursuant to state law, absent minimum contacts under
 
 International Shoe)\
 
 Pierre Riou,
 
 General Jurisdiction Over Foreign Corporations: All that Glitters is not Gold Issue Mining,
 
 14 Rev. Litig. 741 (1995); Matthew Kipp,
 
 Inferring Express Consent: The Paradox of Permitting Registration Statutes to Confer General Jurisdiction, 9
 
 Rev. Litig. 1 (1990).
 

 Therefore, we conclude that the appointment of an agent to receive service of legal process pursuant to NRS 680A.250 does not in itself subject a non-resident insurance company to the personal jurisdiction of Nevada courts. We further conclude that the district court properly determined that West American and Ohio Casualty did not have sufficient contacts with Nevada to subject them to the personal jurisdiction of Nevada courts. Accordingly, we deny Freeman’s petition for a writ of mandamus.
 

 [1]
 

 NRS 680A.250 provides that:
 

 1. Before the commissioner may authorize it to transact insurance in this state, each insurer must appoint the commissioner, and his successors in office, as its attorney to receive service of legal process issued against the insurer in this state. The appointment must be made on a form as designated and furnished by the commissioner, and must be accompanied by a copy of a resolution of the board of directors or like governing body of the insurer, if an incorporated insurer, showing that those officers who executed the appointment were authorized to do so on behalf of the insurer.
 

 2. The appointment must be irrevocable, must bind the insurer and any successor in interest to the assets or liabilities of the insurer, and must remain in effect as long as there is in force any contract of the
 
 *552
 
 insurer in this state or any obligation of the insurer arising out of its transactions in this state.
 

 3. Service of such process against a foreign or alien insurer must be made only by service thereof upon the commissioner.
 

 4. Service of such process against a domestic insurer may be made as provided in this section, or in any other manner provided by Nevada Rules of Civil Procedure.
 

 5. At the time of application for a certificate of authority the insurer shall file the appointment with the commissioner, together with a designation of the person to whom process against it served upon the commissioner is to be forwarded. The insurer shall provide written notice to the commissioner of any change of such a designation by a new filing.
 

 [2]
 

 In 1995, West American sued Freeman for reimbursement of funds paid to Freeman to defend a lawsuit against Freeman concerning a house he built in Palo Alto, California. Freeman cross-complained for breach of contract, breach of the covenant of good faith and fair dealing and economic duress. The jury found in Freeman’s favor, and the resulting judgment was affirmed on appeal. West American Ins. v. Freeman, 44 Cal. Rptr. 2d 555 (Ct. App. 1995).
 

 [3]
 

 However,
 
 Gold Issue
 
 has been criticized by modern legal scholars.
 
 See
 
 Pierre Riou,
 
 General Jurisdiction Over Foreign Corporations: All that Glitters is not Gold Issue Mining,
 
 14 Rev. Litig. 741 (1995); Matthew Kipp,
 
 Inferring Express Consent: The Paradox of Permitting Registration Statutes to Confer General Jurisdiction, 9
 
 Rev. Litig. 1 (1990).
 

 [4]
 

 The court also made an alternative ruling that the Ohio corporation had sufficient “minimum contacts” with Delaware to support jurisdiction since the Ohio corporation owned a Delaware corporation whose alleged mismanagement was part of the lawsuit.
 
 Sternberg,
 
 550 A.2d at 1125-26.
 

 [5]
 

 The reasoning in
 
 Sternberg
 
 was thoroughly criticized in the article by Matthew Kipp, 9 Rev. Litig. at 39-42.
 

 [6]
 

 The Supreme Court may have retreated from this position in Burnham v. Superior Court of California, County of Marin, 495 U.S. 604 (1990), where only a plurality of four justices insisted that all jurisdictional bases must pass the
 
 International Shoe
 
 test.
 
 See
 
 1 Casad & Richman,
 
 Jurisdiction in Civil Actions
 
 § 2-3[1][b].