FERNANDEZ, Circuit Judge,
dissenting:
Timothy King[1] appeals the district court’s dismissal for lack of personal jurisdiction of his action against American Family Mutual Insurance Company and American Standard Insurance Company of Wisconsin (collectively “the Companies”). The majority agrees with the district court; I do not. Thus, I respectfully dissent.
The sole question before us is whether the district court has personal jurisdiction over the Companies. In answering that question, I will first refine what I see as the nature of the Companies’ connection to Montana and will then determine the personal jurisdiction questions.
Under Montana law, if a company wishes to sell insurance in the state, it must obtain a certificate of authority. See Mont.Code Ann. § 33-1-312(2). In order to obtain the certificate the company “shall appoint the [Commissioner of Insurance of the State of Montana] as its attorney to receive service of legal process issued against it in Montana.” Mont.Code Ann. § 33-1-601(1). The Companies did just that,[2] and their certificates of authority *581 were duly issued. Each certificate by its terras provides that it “shall continue in force as long as the Company is entitled thereto under the laws of the State of Montana and until suspended or revoked or otherwise terminated.” Neither certificate has been terminated; indeed, the Companies acknowledge that they have paid the necessary fees to maintain the certificates because, as they put it, they wish to “preserve the level of progress made on their approval” and want to preserve their business names in Montana. Were it not for the Appointments, even that could not be accomplished.
The Companies point out, however, that they have no officers or employees in Montana, do not advertise or solicit business in Montana, and have not yet issued policies or collected premiums in Montana. In fact, they cannot actually issue policies in Montana until they also submit their policy forms, their rate schedules and a list of their agents who would sell policies. in Montana. Nevertheless, the Appointments are still on file and their certificates are still valid.
I am mindful of the provision of the Montana Code which states that: “The appointment is irrevocable, binds the insurer and any successor in interest or to the assets or liabilities of the insurer, and remains in effect as long as there is in force in Montana any contract made by the insurer or obligations arising from a contract.” MontCode Ann. § 33-1-601(1). The Appointment itself contains similar language. As I see it, that is effective to cover this case, even if the Companies have not yet issued policies in Montana. In the first place, the Appointments here must be in effect; otherwise the certificates of authority would not be in force, and the Companies have made sure that the certificates remain in force. The Companies’ failure to submit other documents does not obnebulate that fact. Secondly, there can be no doubt that transitory contracts between the Companies and King exist; and the contracts themselves indicate that they insure King throughout the United States. It would be bizarre to decide that the contracts are not in force (effective) in Montana simply because the Companies do not do any business there. While the Montana Supreme Court has not specifically so stated, I am satisfied that, if asked, it would declare that the contracts are in force in that. state, even if the policies on which they are based were not issued there.[3] That being the case, I would so determine at this time. See Hemmings v. Tidyman’s Inc., 285 F.3d 1174, 1203 (9th Cir.2002). Moreover, unlike a situation where an insurance company had no contacts with Montana, and could not reasonably foresee being hailed into a Montana court,[4] here the Companies had obtained and retained certificates of *582 authority by, among other things, filing the Appointments. They should have foreseen the possibility of having to appear and litigate in the Montana courts.[5]
Therefore, I would hold that the Appointments do apply to this action. What remains is the question of whether they conferred personal jurisdiction upon the Montana courts.
We have held that the law of Montana permits “the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process.” Davis v. Am. Family Mut. Ins. Co., 861 F.2d 1159, 1161 (9th Cir.1988). “Where the state and federal limits are coextensive, we must determine whether the exercise of jurisdiction comports with federal constitutional principles of due process.” Id. at 1161. Here, the taking of personal jurisdiction in this instance does comport with due process.
Over ninety years ago, the Supreme Court decided a case with facts very similar to the case before us. See Pa. Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610 (1917). There a Pennsylvania insurance company had issued a policy of insurance in Colorado to an Arizona corporation “insuring buildings in Colorado.” Id. at 94, 37 S.Ct. at 345. The “insurance company had obtained a license to do business” in Missouri, and had “filed with the superintendent of the insurance department a power of attorney for service of process, as required by statute. Id. The insurance company asserted that the power of attorney could only apply to contracts issued in Missouri and that if it extended further, due process would be violated. See id. at 94-95, 37 S.Ct. at 345. The Court had little difficulty in rejecting that proposition. As it said:
The construction of the Missouri statute thus adopted hardly leaves a constitutional question open. The defendant had executed a power of attorney that made service on the superintendent the equivalent of personal service. If by a corporate vote it had accepted service in this specific case, there would be no doubt of the jurisdiction of the state court over a transitory action of contract. If it had appointed an agent authorized in terms to receive service in such cases, there would be equally little doubt. It did appoint an agent in language that rationally might be held to go to that length. The language has been held to go to that length, and the construction did not deprive the defendant of due process of law even if it took the defendant by surprise, which we have no warrant to assert.
Id. at 95, 37 S.Ct. at 345 (citations omitted). That determination appears dispositive here.
However, the Companies point out that the Supreme Court has issued a number of opinions since Pennsylvania Fire, which adopt a flexible approach to personal jurisdiction issues. See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-16, 104 S.Ct. 1868, 1872-73, 80 L.Ed.2d 404 (1984); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445-47, 72 S.Ct. 413, 418-19, 96 L.Ed. 485 (1952); Int’l Shoe Co. v. Washington, 326 U.S. 310, 316-19, 66 S.Ct. 154, 158-60, 90 L.Ed. 95 (1945); see also Bendix Autolite Corp. v. Midwesco Enters., Inc., 486 U.S. 888, 891- *583 92, 108 S.Ct. 2218, 2221, 100 L.Ed.2d 896 (1988). No doubt what the Companies say is true, but it makes no difference here.
In the first place, the Court has never revisited Pennsylvania Fire, nor has it stated that its holding is no longer viable. The contrary is so. For example, in a case decided a few years after Pennsylvania Fire, the Court cited that case and noted that a corporation which appoints an agent for service of process in a state will find itself bound by the scope the state gives to the statute which governs that document. See Robert Mitchell Furniture Co. v. Selden Breck Constr. Co., 257 U.S. 213, 215—16, 42 S.Ct. 84, 85, 66 L.Ed. 201 (1921). As it was, that case involved business transacted elsewhere, and the state in question seemed to limit the scope of its statute to liability incurred within the state itself. Id. at 216, 42 S.Ct. at 85. Later on the Court, again with citation of Pennsylvania Fire, noted that the appointment of an agent “operates as a consent” when an “obligation [is] incurred within the state although the breach occurred without.” Louisville & N.R. Co. v. Chatters, 279 U.S. 320, 329, 49 S.Ct. 329, 332, 73 L.Ed. 711 (1929). Again, the Court emphasized that it all depended on how broadly or narrowly the appointment was treated by the state itself. Id. And in International Shoe, 326 U.S. at 317, 66 S.Ct. at 159, the Court made it apparent that it was discussing situations where “no consent to be sued or authorization to an agent to accept service of process has been given.” As a final example, it is interesting to consider Perkins, 342 U.S. at 445-47, 72 S.Ct. at 418-19, where the Court noted that due process did not prohibit a state from opening or compel it to open its courts to in person-am jurisdiction over actions that did not arise out of a corporation’s activities in the state, and alluded to the appointment of an agent for service of process as one possible method of conferring jurisdiction. In so doing, the Court cited to Pennsylvania Fire. Id. at 446 n. 6, 72 S.Ct. at 418-19 n. 6. Not so much as an example but as a matter of interest, I should also say a bit about Bendix Autolite, 486 U.S. at 891-93, 108 S.Ct. at 2220-21, not for what it did say, but for what it did not say. There, the Court opined on an Ohio statute that required foreign corporations to designate an agent for service of process, which would subject the corporation to the jurisdiction of the state courts, or else suffer the loss of the benefit of statutes of limitations. Id. The Court did not indicate that appointment of an agent for service of process simply could not accomplish the state’s goal; it held, instead, that the confluence of the agent requirement and the other state laws violated the Commerce Clause. Id. In other words, Pennsylvania Fire remains applicable to the case at hand, despite any susurrant or even plangent suggestions that the principles behind it are not as strong as they once were.
Secondly, as the Eighth Circuit Court of Appeals has pointed out, in the cases after International Shoe, the issues involved are rather different from those involved in Pennsylvania Fire. See Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196 (8th Cir. 1990). In that case, there was an automobile accident in Iowa involving Knowlton and a van operated by an Iowa corporation which acted as an agent for Allied, a Delaware corporation with its principal place of business in Illinois, but which did business in Minnesota and had appointed an agent for service of process there. Id. at 1197— 98. Knowlton sued Allied in the United States District Court in Minnesota. The court of appeals determined that there was personal jurisdiction over Allied in Minnesota. It reasoned as follows:
Plaintiff in this case claims that Allied’s business activities in Minnesota are so pervasive that jurisdiction exists even as *584 to claims, such as this one, that are not related to those activities. Because we hold that there is jurisdiction based on consent, we find it unnecessary to pursue this aspect of the analysis.
Consent is the other traditional basis of jurisdiction, existing independently of long-arm statutes. Personal jurisdiction, unlike subject-matter jurisdiction, is primarily concerned with fairness to individual parties. Objections to jurisdiction over the person may be waived, either expressly or by not asserting them in a timely manner. A defendant may voluntarily consent or submit to the jurisdiction of a court which otherwise would not have jurisdiction over it. One of the most solidly established ways of giving such consent is to designate an agent for service of process within the State.
Id. at 1199 (citation omitted). This, of course, supports the continuing viability of Pennsylvania Fire.
The Supreme Court of Delaware has reached the same conclusion, and it has specifically declared that the later Supreme Court decisions are “entirely consistent with the continued viability of its earlier holding in [Pennsylvania Fire ].” Sternberg v. O’Neil, 550 A.2d 1105, 1113 (Del.1988). It did so because it saw Pennsylvania Fire as a kind of express consent case.[6] Id. at 1111.
In short, even if the principles behind Pennsylvania Fire have been somewhat weakened, it is not for us to determine that Pennsylvania Fire is a valetudinarian case and must be absterged from the law of personal jurisdiction. As the Supreme Court has recently reminded the Courts of Appeals: “[I]f the ‘precedent of this Court has direct application to a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.’ ” Tenet v. Doe, 544 U.S. 1, 10-11, 125 S.Ct. 1230, 1237, 161 L.Ed.2d 82 (2005); see also State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S.Ct. 275, 284, 139 L.Ed.2d 199 (1997); Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 1921-22, 104 L.Ed.2d 526 (1989). Therefore, as far as the present record shows, the district court did have personal jurisdiction over the Companies.
I would reverse the district court’s order dismissing the action against the Companies for lack of personal jurisdiction and remand for further proceedings. Thus, I respectfully dissent.

. Gwynne King, Timothy King's wife, was dismissed as a party to this appeal on June 1, 2009, subsequent to the filing of the opening brief.

. Each filed an "Appointment of Attorney to Accept Service of Process,” which stated that the company "does hereby make, constitute and appoint JOHN MORRISON, DULY *581 ELECTED STATE AUDITOR AND COMMISSIONER OF INSURANCE OF THE STATE OF MONTANA, AND HIS SUCCESSORS IN OFFICE, to be its true and lawful Attorney upon whom all legal process in any action or proceeding[may be served], ... and does consent and agree that any lawful process against it which is served upon said Attorney shall be of the same legal force and validity as if served upon the said company....” (Hereafter, “the Appointment.”)

. Cf. Carter v. Miss. Farm Bureau Cas. Ins. Co., 326 Mont. 350, 109 P.3d 735, 740 (2005) (In a first party case (the one at hand is a first party case) where no authorization for service of process existed, the mere fact of a policy’s national coverage would not confer personal jurisdiction on the Montana courts.) Note, however, that in a third party case, even the lack of an authorization would not preclude personal jurisdiction. See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913-914 (9th Cir. 1990).

. See Carter, 109 P.3d at 741.

. I express no opinion about where the dispute between King and the Companies can be said to have arisen; that was not before the district court and it is not before us. Of course, the dispute is closely related to the accident in Montana and, on that account, the Companies were joined in the action against the other motorist and her insurer. After removal, the others, apparently, settled and the matter was dismissed as to them.

. In a different context, we have declared that voluntary consent will suffice to confer personal jurisdiction. See SEC v. Blazon Corp., 609 F.2d 960, 965 (9th Cir.1979).